UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CANDIDA DIAZ, as Parent and Natural
Guardian of N.D., and CANDIDA DIAZ,
Individually,

JENNIE LANDSMAN, as Parent and Natural
Guardian of B.L., and JENNIE LANDSMAN,
Individually,

                              Plaintiffs,

              -against-

MELISSA AVILES-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education, and the NEW
YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendants.

Case No. 1:24-cv-09340 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

        Candida Diaz ("Diaz"), as parent and natural guardian of N.D. and in her individual

capacity, and Jennie Landsman ("Landsman"), as parent and natural guardian of B.L. and in her

individual capacity (together, "Plaintiffs"), bring this action pursuant to the Individuals with

Disabilities Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*, and 42 U.S.C. § 1983 against the New

York City Department of Education (the "DOE") and Melissa Aviles-Ramos, in her official

capacity as DOE Chancellor (together with the DOE, "Defendants").  Plaintiffs seek

implementation of final administrative orders that required the DOE to fund their children's

educational placements at the International Institute for the Brain ("iBrain"), including tuition

and related services, as well as special transportation.  Now before the Court are the parties'

cross-motions for summary judgment. For the following reasons, Defendants' motion is DENIED and Plaintiffs' motion is GRANTED.

## BACKGROUND

### I.    Factual Background

The Court draws the following facts from the parties' submissions in support of their respective motions for summary judgment, including the parties' Local Rule 56.1 statements and responses. *See, e.g.*, Dkt. 19 ("Pl. SUF"); Dkt. 24 ("Df. SUF"), Dkt. 25 ("Df. RSUF"); Dkt. 29 ("Pl. RSUF"); Dkt. 33 ("Df. SRSUF"). The facts are undisputed unless otherwise noted.

### A.    N.D.'s State Administrative Proceedings

Plaintiff Diaz is N.D.'s parent. Pl. SUF at 1. N.D. is a twelve-year-old student with a traumatic brain injury that impairs, among other things, his cognition, language, and motor abilities. Df. RSUF ¶ 4. N.D. also has diagnoses of quadriplegic infantile cerebral palsy, autism spectrum disorder, seizures, and developmental delays; is nonambulatory, uses a wheelchair, has limited verbal abilities; and has difficulties with self-care tasks, coordination, and grasping objects. Df. RSUF ¶¶ 5-6. N.D. therefore "requires adult assistance for all educational activities and life skills." Df. RSUF ¶ 6.

On July 10, 2024, Diaz filed a Due Process Complaint ("DPC") alleging that the DOE failed to offer N.D. a free and appropriate public education (a "FAPE") for the 2024-2025 school year. Df. RSUF ¶ 2. A hearing took place before Impartial Hearing Officer ("IHO") Sabrina Styza on September 24 and September 26, 2024. Df. RSUF ¶¶ 11-12. The IHO issued a Findings of Fact and Decision ("FOFD") in favor of Diaz, finding that the district failed to provide a FAPE to N.D. for the 2024-2025 school year and that N.D.'s private placement was appropriate, and ordering the DOE to fund N.B.'s full tuition and specialty transportation. Df. RSUF ¶ 13.

Defendants did not appeal the FOFD.  *See* Pl. RSUF ¶ 10.  The parties agree that the DOE has since paid all outstanding balances for N.D.  Pl. RSUF ¶ 2.

## B.  B.L.'s State Administrative Proceedings

Plaintiff Landsman is B.L.'s parent.  Pl. SUF at 1.  B.L. is diagnosed with Canavan's Disease, a progressive neurological disorder, as well as hypotonia and cortical visual impairment.  Df. RSUF ¶¶ 17-18.  B.L. is also nonverbal and nonambulatory, depends on a g-tube for feeding, and requires assistive technology for communication.  PL SUF ¶ 19.

On August 9, 2022, Landsman filed an amended DPC alleging that the DOE failed to provide B.L. with a FAPE for the 2019-2020, 2020-2021, 2021-2022, and 2022-2023 extended school years.  Df. RSUF ¶ 16; Pl. RSUF ¶¶ 3-4.[1]  An impartial hearing commenced on January 26, 2024, and concluded on May 1, 2024.  Df. RSUF ¶ 24.

On September 20, 2024, IHO Barbara Caravello issued a FOFD, finding that the DOE did not provide a FAPE for the 2019-2020, 2020-2021, 2021-2022 and 2022-2023 extended school years.  Df. RSUF ¶ 25.  As relevant here, IHO Caravello ordered:

> (3) The DOE shall directly fund the Student's tuition to iBrain for the extended school years of 2021-2022 and 2022-2023, which fully includes related services, a 1:1 nurse and a 1:1 paraprofessional, if these services were provided within those school years.

> (4) The DOE shall reimburse the out-of-pocket expenses for services they obtained by the Parent, including OT, PT, SLT, VES, AT (including any maintenance of AT or AAC devices paid out-of-pocket by the Parents) during the 2019-2020, 2020-2021, 2021-2022 and 2022-2023 school years to make up for DOE's failure to provide the Student with appropriate services.

> (5) The DOE shall directly fund and/or reimburse special education transportation with limited travel time, a lift bus, a wheelchair, air-conditioning, and a 1:1 nurse for any years that have been provided.

---

[1] The parties dispute the timing of the filing of Landsman's amended DPC complaint.  The underlying FOFD, however, indicates that it was filed on August 9, 2022.  Dkt. 1-2 ("FOFD") at 4.

(6) If the Parents are seeking reimbursement either for tuition, transportation, or provision of services, the Parents are to present to the Implementation Unit proof of contractual obligation, if any exists, or invoices and actual payment thereof.

Df. RSUF ¶ 26.  On November 15, 2024, pursuant to the FOFD, Landsman submitted documents for the DOE's review and requested disbursements for outstanding tuition, transportation, and nursing payments due for the 2021-2022 and 2022-2023 school years.  Df. SRSUF ¶ 3.[2] Specifically, Landsman submitted: (1) documents pertaining to transportation services provided by Sister's Travel and Transportation Service for the 2021-2022 and 2022-2023 school years, including the underlying contractual agreements, monthly invoices for the relevant years, and affidavits from Sister's Travel and Transportation Service; and (2) documents pertaining to nursing services provided by B&H Healthcare Nursing for the 2021-2022 and 2022-2023 school years, including the underlying contractual agreements, monthly invoices for the relevant years, and affidavits from B&H Healthcare Nursing.  Df. SRSUF ¶ 3; *see also* Dkts. 29-2 to 29-10.

In accordance with the FOFD, the Impartial Hearing Order Implementation Unit ("IHOIU") has processed $213,664.00 for tuition at iBrain for the 2021-2022 and 2022-2023 extended school years.  Pl. RSUF ¶ 14.  B.L. has not provided attendance records or any other documentation showing services actually rendered.  Dkt. 26 ("Kapoor Decl.") ¶ 7.  IHOIU has since requested additional information "showing dates that the services were actually provided."  Pl. RSUF ¶¶ 16-17.

## II.  Procedural History

Plaintiffs commenced this action on December 9, 2024.  Dkt. 1 ("Compl.").  Plaintiffs moved for summary judgment on February 24, 2025.  Dkt. 17; Dkt. 18 ("Pl. Br.").  Defendants

---

[2] The Court notes that Defendants deviated from Local Civil Rule 56.1, insofar as Defendants' Response to Plaintiffs' Counter Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, Dkt. 33, does not correspond with the numbered paragraphs in Plaintiffs' Response to Defendants' 56.1 Statement, Dkt. 29.

cross-moved for summary judgment and opposed Plaintiffs' motion on March 28, 2025.

Dkt. 22; Dkt. 23. ("Df. Br.").  Plaintiffs opposed Defendants' cross-motion and replied in further

support of their motion on  April 11, 2025.  Dkt. 28 ("Pl. Reply").  Defendants replied in further

support of their cross-motion on May 2, 2025.  Dkt. 34 ("Df. Reply").  The motions are now

fully briefed.

## LEGAL STANDARD

"In a district court proceeding under the IDEA, the parties and the court typically style

the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an

appeal from an administrative determination, not a summary judgment motion.'"  *Bd. of Educ. v.

C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217,

226 (2d Cir. 2012)).  "The district court therefore 'engages in an independent review of the

administrative record and makes a determination based on a preponderance of the evidence.'"

*Id.* (alterations adopted) (quoting *M.H.*, 685 F.3d at 240).  In conducting this independent review,

the court "must give due weight to the administrative proceedings, mindful that the judiciary

generally lacks the specialized knowledge and experience necessary to resolve persistent and

difficult questions of educational policy."  *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 243 (2d

Cir. 2015) (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)).

"Summary judgment in the IDEA context, therefore, is only a 'pragmatic procedural

mechanism for reviewing administrative decisions.'"  *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*,

725 F.3d 131, 138 (2d Cir. 2013) (quoting *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch.

Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam)).  "Accordingly, the usual summary

judgment standards do not apply."  *Phillips v. Aviles-Ramos*, No. 23-cv-02140 (JPC) (JW), 2025

WL 934342, at *5 (S.D.N.Y. Mar. 27, 2025).  "[T]he inquiry . . . is not directed to discerning

whether there are disputed issues of fact, but rather, whether the administrative record, together

5

with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. N.Y.C. Dep't of Educ.*, 550 F. Supp. 2d 420, 429 n.10 (S.D.N.Y. 2008) (omission in original) (citation omitted).

## DISCUSSION

### I.    Statutory Framework

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); *accord M.H.*, 685 F.3d at 223. The IDEA requires school districts to provide a FAPE to all students with disabilities. 20 U.S.C. § 1412(a)(1)(A). Under the IDEA, an adequate individualized education plan ("IEP") must "be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement," but "need not furnish every special service necessary to maximize each handicapped child's potential." *M.H.*, 685 F.3d at 224 (alterations and omissions adopted) (first quoting *T.P.*, 554 F.3d at 254; and then quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003)).

"Under the IDEA, a parent has recourse to various formal and informal mechanisms to resolve disputes related to her child's education." *Montalvan v. Banks*, 707 F. Supp. 3d 417, 424 n.7 (S.D.N.Y. 2023). One such mechanism permits a parent to challenge any matter related to the state's provision of a FAPE by filing a "due process complaint" with the state's educational agency. *See* 20 U.S.C. § 1415(b)(6)(A); *Montalvan*, 707 F. Supp. 3d at 427. Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). In New York, if the parent's concerns cannot be resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the

6

matter proceeds to a "due process hearing" before an IHO, *id.* § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a). The parent may then appeal an IHO's decision to the Office of State Review, where a state review officer "conduct[s] an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g)(2); N.Y. Educ. Law § 4404(2). The local school board bears the initial burden of establishing the validity of its IEP at a due process hearing. *R.E.*, 694 F.3d at 184 (citing N.Y. Educ. Law § 4404(1)(c)). If the district "fails to carry this burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them." *Id.* at 185.

Parents dissatisfied with their student's IEP may unilaterally place their student in a private school during the pendency of review proceedings and then seek tuition reimbursement from their school district, but they "do so at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993) (citation omitted); *see* 20 U.S.C. § 1412(a)(10)(C).

Plaintiffs "may seek to enforce their IDEA claim under § 1983, under which [the federal courts] ha[ve] subject matter jurisdiction to enforce favorable administrative decisions rendered under the provisions of the IDEA." *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-cv-09778 (KMK), 2019 WL 1437823, at *25 (S.D.N.Y. Mar. 29, 2019) (citation omitted).

## II.    The Cross-Motions

The parties' sole remaining dispute relates to the scope of the DOE's funding obligations for B.L.'s nursing and special transportation services for the 2021-2022 and 2022-2023 extended school years. Specifically, the parties contest (1) whether the DOE is responsible for funding B.L.'s transportation and nursing costs for every school day or only for those days B.L. attended school in person and actually used the services; and (2) whether B.L. has supplied the necessary

documentation as a prerequisite to payment for those services.  *See* Pl. Br. at 12-15; Df. Br. at 7-13.

Plaintiffs also move under 20 U.S.C. § 1415(i)(3)(B) for an order confirming that they were the "prevailing parties" in the underlying administrative proceedings and are therefore entitled to statutory costs and reasonable attorneys' fees in this action.  Pl. Br. at 2.  Defendants concede that "Plaintiffs may be entitled to fees as prevailing parties for the underlying administrative proceeding," but maintain that Plaintiffs are not entitled to attorneys' fees for the present federal action.  Df. Br. at 14.

The Court addresses these points in turn.[3]

### A. The DOE's Funding Obligations

The parties dispute whether the underlying administrative order obligates the DOE to provide direct funding for nursing and transportation for B.L. for all the contracted-for days in the school year, as Plaintiffs urge, or only to the extent services were actually provided and

---

[3] Defendants also move to strike Plaintiff's Local Rule 56.1 Counter-Statement of Facts, Pl. RSUF ¶¶ 19-31, and the supplemental declaration of Kenneth Willard, Dkt. 29-1, as improper under the local rules. Df. Reply at 2-3. Specifically, Defendants argue that "many of the facts" contained in Plaintiffs' Local Rule 56.1 Counter Statement are "simply recitations of the information found in the attached exhibits" and/or are "undisputed," and thus "unnecessarily submitted," in violation of Local Rule 56.1(b). *Id.* at 2. Moreover, Defendants argue that the Willard Declaration should be stricken because Plaintiffs' counsel represents that the document was executed on April 3, 2025, even though it is dated April 11, 2025, thereby violating Local Rule 1.9. *Id.* at 3. The Court finds no basis for granting these motions to strike. Reiterating factual allegations contained in the appended exhibits in the Counter Statement of Facts does not run afoul of Local Rule 56.1, and to the extent that Plaintiffs included facts that Defendants did not subsequently dispute, Plaintiffs could not have foreseen at the time of filing that no "genuine issue" of fact existed. As for the Willard Declaration, the Court does not find that a typographical error between the represented date of execution and the signed date warrants striking the declaration in its entirety when the declaration substantially complies with 28 U.S.C. § 1746. In denying Defendants' motions to strike, the Court reiterates that "[m]otions to strike are generally disfavored, and should be granted only when there is a strong basis for doing so." *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 330 (S.D.N.Y. 2025) (citation omitted). No such basis is apparent here.

contingent upon proof of in-person attendance, as Defendants argue.  For the reasons that follow, the Court finds that the FOFD requires the DOE to provide funding for all contracted-for days in the relevant school year for B.L., not just those days on which services were "actually provided."

"The IDEA itself provides no guidance as to the DOE's obligation to pay for transportation and related services under these circumstances, and, accordingly, 'the sole source of the DOE's reimbursement obligations . . . is the applicable administrative order.'" *Zimmerman v. Banks*, No. 23-cv-09003 (JGK), 2024 WL 4882370, at *4 (S.D.N.Y. Nov. 25, 2024) (omission in original) (quoting *Davis v. Banks*, No. 22-cv-08184 (JMF), 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023)).  "In considering the scope of administrative orders, courts apply principles of contract interpretation."  *Id.*  Therefore, the extent of the DOE's funding obligations turns on the language of the underlying FOFD.

*Donohue v. Banks* faced substantially the same question with respect to the breadth of the DOE's reimbursement obligations as presented here and is therefore instructive.  No. 22-cv-08998 (JPC), 2023 WL 6386014 (S.D.N.Y. Sept. 30, 2023).  In *Donohue*, the plaintiffs similarly argued that the DOE was obliged to reimburse them for "any costs of transportation services regardless of whether the student utilized such services," while the DOE urged the court to limit its reimbursement obligations to "transportation services *actually provided* to the student."  *Id.* at *8.  The court looked to the "precise language of each administrative order" at issue and identified three relevant categories of administrative orders, each of which conferred different funding obligations on the DOE.  *Id.* at *9; *see also id.* at *9-12.  The first category of administrative orders included language that "ma[d]e clear" that the DOE was obligated to pay all transportation costs, for instance, by requiring the DOE "to fund the cost of [the student's] transportation to and from iBRAIN . . . *in accordance with the contract* entered into by the

[p]arent," and requiring the DOE to pay "*any* transportation costs upon presentation of invoices for [the] same." *Id.* at *9 (second alteration in original).  Therefore, the Court held that the plaintiff was entitled to reimbursement for transportation costs based on the relevant transportation contract rather than only for days where transportation was actually provided. *Id.* In contrast, the second category of orders required reimbursement only for transportation services "actually provided" and included language to that effect, ordering the district to "directly fund the costs of transportation . . . for transportation services . . . that were *actually provided*," or "*for the actual numbers of days*" the student was transported. *Id.* at *10-11.  Only the final category of administrative orders were found to be "unclear as to the scope of the DOE's reimbursement obligations for transportation services," because they generally required the DOE to fund transportation for students "to and from" school. *Id.* at *11 (initial capitalization omitted).  With respect to this last category, the court remanded for further clarification, finding that it was "unclear . . . whether they require[d] the DOE to reimburse transportation costs only for days attended or for the full transportation contract regardless of actual attendance." *Id.* at *11-12.

Although none of the categories in *Donohue* included the precise language at issue here, *Donohue* nevertheless guides this Court's analysis in examining the FOFD given that the more restrictive language of services "actually provided" is not used here.  The FOFD at issue here provided that the DOE shall "directly fund the Student's tuition to iBrain for the extended school year of 2021-22 and 2022-23," including for a one-to-one nurse, if "th[o]se services were *provided within those school years*." FOFD at 24 (emphasis added).  Likewise, the FOFD instructed the DOE to "fund and/or reimburse special education transportation with limited time travel, a lift bus, a wheelchair, air conditioning . . . and a 1:1 nurse" for "*any years that have*

*been provided*." *Id.* (emphasis added).  Defendants argue that this language confers an

obligation to provide reimbursement only for services "actually provided," that is, days the child

actually rode the bus or attended school and received nursing services.  Df. Br. at 7.  But, unlike

the second category of orders in *Donohue* that used the language "actually provided," the

FOFD's language here more closely tracks obligations under Plaintiff Landsman's contractual

obligations under the Sister's Travel and Transportation Services and B&H Healthcare Nursing

agreements, which provided for services on an *annual* basis.  *See* Dkts. 29-3, 29-5 (Sister

Transportation Services agreements for 2021-22 and 2022-23 school years); Dkts. 29-7, 29-9

(B&H Healthcare Nursing agreements for 2021-22 and 2022-23 school years).  There is no basis

for imposing a per-diem requirement on the DOE's funding obligations for services actually

provided on given days when the FOFD's language is consistently framed in terms of annual, not

daily, services.  *See, e.g.*, *Zimmerman*, 2024 WL 4882370, at *5 (rejecting claim that order

required proof of services "actually provided" or "actually rendered" or "actually used" where

the order "never used those specific words"); *de Paulino v. N.Y.C Dep't of Educ.*, No. 22-cv-

01865 (PAE), 2024 WL 3520420, at *4 (S.D.N.Y. July 24, 2024) (declining to impose

requirement that costs be reimbursed "merely for those days or hours as to which attendance can

be proven" where the relevant order was not so qualified, and instead provided for tuition and

transportation costs "for the student's attendance at the private school" for the relevant school

year (capitalization omitted)).  The more natural reading of the FOFD is that the DOE is required

to reimburse and/or directly fund nursing and transportation services so long as those services

were rendered within the relevant school years, irrespective of whether they were "actually

provided" on a day-by-day basis.  *See, e.g.*, *Zimmerman*, 2024 WL 4882370, at *5

(acknowledging that "[t]ransportation is a yearly cost, not a per diem service" (alteration in original)).[4]

The language here is readily distinguishable from those orders which courts have found to require funding only for transportation "actually provided" on given days.  *See, e.g.*, *Donohue*, 2023 WL 6386014, at *11 (administrative orders requiring the DOE to pay costs for transportation services "for the actual numbers of days" that the student was transported, or for transportation services "to and from" school that were "actually provided" (emphases omitted)); *Araujo v. N.Y.C. Dep't of Educ.*, No. 20-cv-07032 (LGS), 2023 WL 5097982, at *2, *3 (S.D.N.Y. Aug. 9, 2023) (finding that order providing for directing funding for transportation services "actually provided to the student" required "at least some evidence of which days [the student] actually used transportation services"); *Davis*, 2023 WL 5917659, at *4 (holding that, where the relevant orders provided, in pertinent part, that the "parent or guardian is to be reimbursed only for transportation services 'actually provided,' . . . [p]laintiffs [were] entitled to reimbursement only for days that their children actually used transportation services"); *Juca v. Banks*, No. 23-cv-03508 (JHR) (BCM), 2024 U.S. Dist. LEXIS 159988, at *17 (S.D.N.Y. Sept. 4, 2024) (where orders stated that the DOE need only pay for transportation services "actually provided," adopting "the uniform view of judges in this District that this phrase 'makes clear that the DOE's reimbursement obligation is restricted to services provided on the days the child

---

[4] The Court also observes that this interpretation of the FOFD is consistent with Plaintiff Landsman's requested relief in the underlying administrative proceedings.  *See, e.g.*, Dkt. 1-2 ("FOFD") at 5 ("The Parent seeks direct payment of educational expenses and costs, including tuition, related services, one-to-one nursing services and transportation *as contracted by the Parent*." (emphasis added)).  While not dispositive to the Court's analysis, the Court observes that where the IHO departed from Plaintiff's requested relief — for example, with respect to compensatory education for the 2019-2020 and 2020-21 school years — it expressly stated so; there is no indication on the face of the FOFD that the IHO intended to depart from Landsman's requested relief as to direct funding for one-to-one nursing or transportation services.

attended school'" (quoting *Donohue*, 2023 WL 6386014, at *10)).  Although Defendants argue

that this case is no different from *Araujo* and the second category of reimbursement in *Donohue*,

the FOFD here is only superficially similar to the administrative orders in those cases, insofar as

it also uses the word "provided," FOFD at 24.  But here, the pertinent language contains no

suggestion of per-diem funding and/or reimbursement and, to the contrary, the only qualification

as to the DOE's payment obligations is that the transportation and nursing services must have

been rendered during the relevant school years.  *See id.*

        Defendants separately argue that requiring Plaintiffs to produce attendance sheets as a

prerequisite to the DOE's funding obligations is appropriate because certain provisions of state

law require schools like iBrain to maintain attendance records.  *See* Df. Br. at 9-10 (citing N.Y.

Comp. Codes R. & Regs, tit. 8, § 104.1(a); then citing N.Y. Educ. Law § 3211; and then citing,

*Mandated Services Aid/Comprehensive Attendance Policy (MSA-CAP)*, N.Y. State Educ. Dep't,

https://www.nysed.gov/nonpublic-schools/mandated-services-aidcomprehensive-attendance-

policy-msa-cap#cap [https://perma.cc/ZNU8-ED9Z]).  These are regulations that bear no

relationship to the DOE's reimbursement obligations under the IDEA.  That iBrain is obligated

to maintain attendance records under various state laws and regulations (and therefore

presumably has such records at its disposal) does not impact the scope of either the DOE's

reimbursement obligations or Plaintiff Landsman's documentation requirements here, both of

which are dictated by the FOFD.  The Court is likewise unpersuaded by Defendants' citation to

the Impartial Hearing Order Implementation Authorization Guide promulgated by the DOE, Df.

Br. at 9-10, which sets forth various requirements for submitting documentation to the IHOIU

not apparent on the face of the FOFD.  To the extent the IHO's FOFD and the DOE's guidance

are inconsistent because the DOE's guidance recommends submitting "proof of attendance," *id.* at 12, the FOFD takes precedence.

Finally, the Court rejects Defendants' request to remand this matter to the IHO for further clarification as to the FOFD's intended meaning. "A court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies." *Hidalgo v. N.Y.C. Dep't of Educ.*, No. 20-cv-00098 (JGK), 2021 WL 2827037, at *5 (S.D.N.Y. July 7, 2021) (citation omitted). For the reasons set forth above, the Court does not find that the FOFD is unclear with respect to the DOE's funding obligations and therefore finds no basis for remand.

For the foregoing reasons, the Court grants Plaintiffs' summary judgment motion as to their transportation claim for B.L.

## B. Documentation for Direct Funding and/or Reimbursement

The parties also dispute whether Plaintiff Landsman has provided the necessary documentation for direct funding.[5] Defendants maintain that, "[p]rior to the commencement of this action, the [DOE] requested, and Plaintiffs failed to provide, the necessary documentation pursuant to the FOFD to allow DOE to engage in the necessary administrative procedures and

---

[5] As Defendants note in their reply memorandum, Df. Reply at 7-8, the Court acknowledges that there is some slippage in Landsman's terminology with respect to whether she is seeking "reimbursement" or "direct funding." In response to Defendant's 56. 1 Statement, Landsman admits that she is seeking direct funding, not reimbursement. Pl. RSUF ¶ 15. This is consistent with Landsman's representation in her memorandum of law in support of her motion for summary judgment, where she explicitly states that she "is not seeking reimbursement but direct payment, a distinction the IHO recognized." Pl. Br. at 12. However, in her opposition to Defendants' motion for summary judgment, Landsman states that she "submitted agreements, invoices and affidavits from the relevant vendors for the 2021-2022 and 2022-23 school years to the DOE" and "requested reimbursement for the same." Pl. Reply at 6. Indeed, Defendants in their opposition memorandum likewise stated that "Plaintiff seeks direct funding." Df. Br. at 12. The Court assumes, consistent with Landsman's affirmative statements to that effect and Defendants' prior representations, that she is not in fact seeking reimbursement but direct payment, and that her stray reference to "reimbursement" was in error.

comply with their payment obligations regarding transportation services and nursing for the two school years at issue." Df. Br. at 3. Specifically, Defendants argue that, because Landsman is seeking direct payment to the transportation and nursing providers, Landsman must provide "documentation . . . of the transportation and nursing services that were actually provided or utilized by Plaintiffs before submitting payment." *Id.* Landsman, on the other hand, argues that because the FOFD explicitly distinguishes between reimbursement and direct payment, and requires "proof of contractual obligation, invoices, and actual payment" only for the former, she need not provide any documentation. Pl. Br. at 12. Moreover, Landsman argues that "even assuming the reimbursement standard applies, [she] has already provided sufficient documentation to satisfy the FOFD's requirements," including proof of contractual obligations for the relevant school years. *Id.*

For the reasons set forth above, the Court declines to find that Landsman must provide documentation of in-school attendance as a prerequisite for receiving funds for nursing and transportation services. The Court also agrees with Plaintiffs that the FOFD delineates between "reimbursement" and "direct payment," and that while the FOFD explicitly requires documentation for the former, it is silent as to documentation for the latter.

However, while the Court does not go so far as adopting Defendants' urged per-diem argument, the Court finds, for the reasons set forth above, that the FOFD does require some corroboration that services were provided within relevant school years. On that front, the documentation that Landsman has already provided to the DOE, including proof of contractual obligations for the relevant school years, is sufficient. Plaintiff Landsman has submitted the relevant contracts with Sisters Travel and Transportation Services for the 2021-2022 and 2022-2023 school years, as well as monthly invoices and affidavits regarding services rendered during

those periods.  *See* Dkts. 29-3 to 29-5.  Plaintiffs have submitted similar documentation for B&H

Healthcare Nursing services during the same period.  *See* Dkts 29-6 to 29-10.  The invoices

establish service dates from September 13, 2021, to June 23, 2022, for the 2021-2022 school

year, and from July 6, 2022, to June 23, 2023, during the 2022-2023 school year, and therefore

decidedly establish that both nursing and transportation services were in fact "provided" during

the 2021-2022 and 2022-2023 years for purposes of satisfying the FOFD.[6]  *See* Dkt. 29-4

at 2-11; Dkt. 29-6 at 2-13.

     Therefore, the Court finds that Landsman's documentation of contractual obligations and

monthly invoices for nursing and transportation services for the 2021-2022 and 2022-2023

school years satisfies Landsman's obligations under the FOFD.

### C.  Attorney's Fees

     Plaintiffs also seek reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(I).  Br.

at 17-18.  Plaintiffs ask the Court to declare them prevailing parties entitled to such fees, and to

permit them to make a subsequent fee motion under the IDEA.  *Id.*

     "Pursuant to the IDEA, the Court, 'in its discretion, may award reasonable attorneys' fees

as part of the costs . . . to a prevailing party who is the parent of a child with a disability.'"  *Boffa*

---

[6] Citing to *Zimmerman v. Banks*, Defendants argue that Plaintiffs' motion should be denied
because "Plaintiffs have failed to cite to any admissible evidence" and therefore "failed to meet
their burden pursuant to Federal Rule of Civil Procedure 56."  Df. Br. at 6 (further capitalization
omitted).  The Court acknowledges that, as in *Zimmerman*, Plaintiffs "failed to attach or cite to
any admissible evidence in connection with [their] motion for summary judgment," 2024 WL
4882370, at *4, and that Plaintiffs' Rule 56.1 statement and memorandum of law only cite to the
Complaint and FOFD, *see generally* Pl. Br.; Pl. SUF.  But the Court declines to deny Plaintiffs'
motion on that basis alone.  Although *Zimmerman* stated in dicta that the failure to append
appropriate documentation to the opening brief "alone justifie[d]" denying the plaintiffs' motion
for summary judgment, the court ultimately denied plaintiffs' motion without prejudice because
of the plaintiffs' failure to submit — even on her reply brief — adequate documentation under
the terms of the FOFD.  *Zimmerman*, 2024 WL 4882370, at *6.  Here, unlike in *Zimmerman*, the
documentation appended to Plaintiffs' reply papers suffices to satisfy Landsman's obligations
under the FOFD.

*v. Banks*, 764 F. Supp. 3d 120, 133 (S.D.N.Y. 2025) (quoting 20 U.S.C. § 1415(i)(3)(B)(i)(I)).

"'[T]he prevailing party standard has been interpreted generously by the Supreme Court and the Second Circuit' in terms of the degree of relief required." *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F. Supp. 2d 336, 345 (S.D.N.Y. 2010) (alteration in original) (quoting *D.M. ex rel. G.M. v. Bd. of Educ.*, 296 F. Supp. 2d 400, 403 (E.D.N.Y. 2003)) (collecting cases). "[T]o qualify as a prevailing party, a litigant must demonstrate she: (1) attained 'success on any significant issue in the litigation that achieve[d] some of the benefit sought in bringing the litigation'; (2) the relief obtained effected a 'material alteration' of the legal relationship between the parties, that is not merely technical or *de minimis* in nature; and (3) the legal alteration was 'judicially sanctioned.'" *M.F.*, 2024 WL 729208, at *6 (second alteration in original) (quoting *B.W.*, 716 F. Supp. 2d at 344). "In the context of an IDEA proceeding, IHO-ordered relief on the merits alters the legal relationship between the parties and thus confers an 'administrative imprimatur' sufficient to support an award of attorney's fees." *B.W.*, 716 F. Supp. 2d at 344 (quoting *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006)). However, "'[a] defendant's voluntary change in conduct . . . lacks the necessary judicial imprimatur' to render the plaintiff a prevailing party." *M.F.*, 2024 WL 729208, at *5 (alteration and omission in original) (quoting *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 123 (2d Cir. 2002)).

Defendants do not dispute that Plaintiffs were the prevailing parties in the underlying administrative hearings. Df. RSUF ¶¶ 15, 28. Therefore, Plaintiffs are entitled to attorneys' fees from the underlying administrative proceedings. *See A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005) (finding that a "plaintiff who receives IHO-ordered relief on the merits in an IDEA administrative proceeding is a 'prevailing party' . . . entitled to payment of attorneys' fees under the IDEA's fee-shifting provisions"). Indeed, Defendants seemingly

concede this point, stating that Plaintiffs "may be entitled to fees as prevailing parties for the underlying administrative proceeding." Df. Br. at 14.

For the reasons set forth above, the Court also grants summary judgment to Landsman on her claims in this action related to B.L.'s transportation and nursing costs. "Generally, a party who 'secure[s] a judgment on the merits' is a prevailing party and is entitled to an award of attorneys' fees under the IDEA." *Phillips*, 2025 WL 934342, at *13 (alteration in original) (quoting *J.C.*, 278 F.3d at 123); *see also Boffa*, 764 F. Supp. 3d at 133 (granting reasonable attorneys' fees where plaintiff was successful on all her claims and demonstrated, among other things, that she was entitled to tuition and transportation reimbursement). Landsman is therefore separately entitled to attorneys' fees as a prevailing party in this action.

Defendants' citation to *M.F. v. New York City Department of Education* does not compel a contrary result. 2024 WL 729208, at *6. In *M.F.*, the court found that plaintiff was not a prevailing party in the action because the court "did not award or sanction any relief," and instead, the DOE "voluntarily agreed" to reimburse the plaintiff's tuition payments. *Id.* There was, however, no favorable underlying administrative proceeding in that case: with respect to the relevant DPC, the parties settled at the administrative level. *Id.* at *1 n.4. Unlike Plaintiffs here, who seek attorneys' fees as prevailing parties in their underlying administrative proceedings, *see* Compl. ¶¶ 91-115, the plaintiff in *M.F.* sought attorneys' fees as the prevailing party in the civil action only, 2024 WL 729208, at *6. And, unlike in *M.F.*, there is a favorable judgment on the merits in this case in favor of Landsman, entitling her to reasonable attorneys' fees for this federal action as well.

For the foregoing reasons, the Court finds that Plaintiff Diaz is entitled to reasonable attorneys' fees for the underlying administrative proceedings, and that Plaintiff Landsman is

entitled to reasonable attorneys' fees for the underlying administrative proceedings and this federal action.

## CONCLUSION

The Court GRANTS Plaintiffs' motion and DENIES Defendants' motion for summary judgment.  By two weeks from the date of this Opinion, the parties shall file a proposed judgment in accordance with this order.  Plaintiffs shall make subsequent applications for attorneys' fees by three weeks from the date of the Opinion.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 22.

Dated: July 31, 2025
    New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge